820 A.2d 616

GRESS, et al.,

v.

ACandS, INC., et al.

Nos. 179, 185, 188 & 191, Sept. Term, 2002.

Court of Special Appeals of Maryland.

March 31, 2003.

370

372

R. Bruce McElhone (Theodore M. Flerlage, James S. Zavakos, Law offices of Peter G. Angelos, for appellants, Mayes and Van Daniker; E. David Hoskins for appellants, Dingus and Gress, Baltimore, on the brief).

James K. Archibald (Andrew Gendron, Marina M. Sabett, Venable, Baetjer and Howard, LLP, Baltimore, Norbert F. Bergholtz, Louise E. Moyer, and Dechert, Price & Rhoads of Philadelphia, PA. on the brief for appellee Philip Morris, Inc.)

Argued before MURPHY, C.J., DEBORAH S. EYLER, THEODORE G. BLOOM (Retired, specially assigned), JJ.

MURPHY, Chief Judge.

The issues in these consolidated appeals from the Circuit Court for Baltimore City arise out of pretrial orders entered by that court on March 22, 2002 and March 28, 2002 in personal injury actions asserted by Patricia A. Gress, Mary E. Mayes, Joseph and Iva Dingus, and George Van Daniker, appellants, against two categories of appellees: the "Asbestos Defendants" [1] and the "Cigarette Defendants." [2] The circuit court dismissed without prejudice appellants' claims against the Cigarette Defendants, and appellants now present a single question for our review:

> Did the trial court err in granting the Cigarette Defendants' Motion to Dismiss or Sever and dismissing the Plaintiffs' amended complaints without prejudice?

Appellees argue that this Court should grant their Motions to Dismiss. For the reasons that follow, we shall (1) on our own initiative, pursuant to Md. Rule 8–602(e)(1)(C), enter final judgments as to appellants' claims against the Cigarette Defendants; (2) grant the Asbestos Defendants' motions to dismiss appeals; (3) deny the Cigarette Defendants' motions to dismiss appeals; (4) vacate the judgments dismissing appellants' claims against the Cigarette Defendants; and (5) remand these cases for further proceedings not inconsistent with this opinion.

### Procedural History

Between 1991 and 1997, appellants filed suit against the Asbestos Defendants. These claims were based on appellants'

---

**1.** The "Asbestos Defendants" are ACandS, Inc., Owens Illinois, Inc., Flintkoke Company, Pfizer Corporation, Universal Refractories, E.L. Stebbings & Co., Inc., Quigley Company, Inc., Owens–Corning Fiberglas Corporation, Corhart Refractories Company, A.W. Chesterton, and Anchor Packing.

**2.** The "Cigarette Defendants" are Brown & Williamson Tobacco Corporation, individually and as successor in interest to The American Tobacco Company, Lorillard Tobacco Company, Phillip Morris Incorporated, R.J. Reynolds Tobacco Company, The Tobacco Institute, Inc., and Liggett Group Inc.

occupational exposure to asbestos products. In 2001, appellants filed Amended Complaints, adding claims against the Cigarette Defendants, and seeking damages for injuries and death allegedly caused by exposure to both asbestos and inhaled cigarette smoke. According to appellants, because the combination of asbestos exposure and cigarette smoking acted in "synergy" and multiplied the risk of developing lung cancer, cigarette smokers who were exposed to asbestos had a much greater chance of developing lung cancer and other disease than non-smokers who were exposed solely to asbestos.

The Cigarette Defendants moved to dismiss or sever the claims that appellants asserted against them, arguing that joinder of the Cigarette Defendants and the Asbestos Defendants was improper. During the March 22, 2002 hearing on appellees' motions, the circuit court asked appellees what relief—dismissal or severance—they thought was more appropriate.

Appellees requested dismissal, and the circuit court ruled as follows:

This Court is satisfied that these cases involve two different kinds of products, two different methods of distribution, two different uses.

The objective of the joinder rule in this Court's view is to facilitate the attainment of a just, speedy and inexpensive determination of all disputes between the staying parties.

And based on these cases and the pleadings and the arguments of counsel, this Court does not believe that joining asbestos defendants with tobacco defendants in these lawsuits will accomplish these goals.

Further, the joint trial this Court believes will cause confusion to the jury because a unique set of practices and procedures have developed under the asbestos docket which would be, in fact, in this Court's view prejudicial to the cigarette defendants if they were added now to these cases.

Further, the addition of the cigarette defendants would disrupt the orderly procedures that the asbestos docket now

has in place. And therefore, this Court will grant the motion to dismiss and will dismiss without prejudice with the right to refile.

Later on that day, the circuit court entered an "Order granting cigarette defendants [sic] motion to dismiss or sever in synergy cases."

On March 27, 2002, two events transpired. Appellants filed a notice of appeal from the March 22, 2002 Orders, and the Cigarette Defendants sent a letter to the circuit court in which they requested that the March 22 Orders be amended to reflect that appellants' claims against the Asbestos Defendants had not been dismissed. On March 28, 2002, and on April 17, 2002,[3] the circuit court entered Amended Orders that dismissed without prejudice only the claims against the Cigarette Defendants.

Thereafter, appellants requested that the circuit court strike the March 28 and April 17 Orders, or in the alternative, enter final judgment pursuant to Md. Rule 2–602(b)(1). On May 31, 2002, the court held a hearing on the various motions and concluded as follows:

> There is no question that on March 22nd this court granted the motion to dismiss the matters, and there was also no question in this court's mind that the court intended to dismiss the cigarette defendants and not the asbestos defendants, and that, by letter, this was brought to the court's attention.

> Therefore, this court felt that the order, because it was not clear, was in fact a clerical error. It was always the court's intention to grant the relief, only the relief that was requested in the motion. And once the court became aware of this clerical error on March 28th, 2002, it issued a new order pursuant to Maryland Rule 2–535(d).

---

**3.** Liggett filed separate motions and proposed orders. The court did not enter an amended order in the *Gress, Van Daniker,* and *Mayes* cases until April 17, 2002. The court has not signed an amended order in the *Dingus* case.

In this court's view, the court had the authority to do that. Although the appeal was filed on March 27th [the notice of appeal at the circuit court], it was not docketed [by the Court of Special Appeals] until April the 11th.

Now, the court agrees with Ms. McDonald and Mr. Skeen that this is the type of clerical error that 2–535(d) was designed to provide for.

Now, in this court's view, since the order of March 28th was not appealable because it was interlocutory and not final, the court then still had jurisdiction to enter an order on April 17th.

However, in an abundance of caution, while the court will deny the motion to strike the March 28th order, the court will merely hold in abeyance, pending leave of the Court of Special Appeals to validate the April 17th order pursuant to 2–535(d).

The circuit court also denied appellants' request that it enter a final judgment against the Cigarette Defendants. This appeal followed.

### Appellees' Motions for Dismissal

Appellees have moved to dismiss this case on the following grounds: (1) the March 22 Orders were not final judgments because the docket entry is deficient, and the court had no intention of dismissing appellants' claims against the Asbestos Defendants; (2) the March 28 and April 17 Orders superseded the March 22 Orders, thereby resolving the issue of whether a final judgment had been entered in favor of the Asbestos Defendants; and (3) the orders at issue are interlocutory and not appealable at this time.

■ Appellants argue that we should refuse to dismiss this case because (1) appellees did not file a post-judgment motion that complies with the requirements of Md. Rules 2–534 or 2–535; [4] (2) the circuit court did not correct a "clerical mistake" when it amended Orders that were consistent in all respects

---

4. Md. Rule 2–534 states:

with the oral ruling placed on the record during the March 22, 2002 hearing; (3) once appellants noted their appeals, the circuit court no longer had the authority to render a final judgment "non-final" by a *sua sponte* correction of a clerical mistake; and (4) even if the Orders at issue in this case were not certified as "final judgments" by the circuit court,[5] this Court should enter final judgments on its own initiative pursuant to Md. Rule 8–602(e)(1)(C).

### Correcting a Clerical Mistake

■ Md. Rule 2–535, in pertinent part, provides:

**Rule 2–535.  Revisory power.**

\* \* \*

(d) *Clerical mistakes.*—Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders.  During the pendency of an appeal, such mistakes may be so correct-

---

**Rule 2–534.  Motion to alter or amend a judgment—Court decision.** In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment.  A motion to alter or amend a judgment may be joined with a motion for new trial.

Even if we were to treat the letter as a motion to alter or amend, appellants were not prejudiced by the court's ruling. *See Bradley v. Hazard Technology Co.*, 340 Md. 202, 206, 665 A.2d 1050 (1995) (on appeal, appellant must show not only error, but also that it was prejudiced).  Appellants had a chance to submit a brief and present argument in open court on its motion to strike the amended orders.  They, thus, were not prejudiced by·the court's failure to allow them time to respond to the March 27 letter or the lack of a hearing prior to entering the amended orders. *See* Md. Rule 2–311 (stating that the court shall not grant a motion to alter or amend without a hearing).

5.  Md. Rule 2–602, in pertinent part, provides:

(b) **When allowed.**  If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties[.]

ed before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court.

Md. Rule 2–535(d) was derived, in part, from former Rule 681, which provided that "clerical mistakes in a decree or decretal order ... may at any time be corrected by order of court upon petition, without a rehearing," and which contemplated the "correction of clerical mistakes, deficiencies in form, inadvertent omissions or obvious mistakes as distinguished from judicial errors." *Jackson v. Jackson*, 260 Md. 138, 141, 271 A.2d 690 (1970).

In *Bailey v. Bailey*, 181 Md. 385, 30 A.2d 249 (1943) the circuit court entered an order dismissing a complaint. Over three months after the order had been enrolled, the court added the words "without prejudice" to the order. On the question of whether the circuit court had the authority to amend the enrolled order, the Court of Appeals stated:

> As a court of equity has inherent power to correct errors in its records whereby they fail to express the truth in regard to its proceedings, **it may amend a final decree after its enrollment by inserting words which were omitted by inadvertence or mistake and which are necessary to express the court's intention** and give proper effect to the remedy intended to be given. This power was recognized by the Supreme Court of Illinois as follows: "**The court may, even after the expiration of the term at which a judgment was rendered, correct or amend the entry thereof so as to make it conform to the judgment which the court actually rendered.** * * * Any amendments permissible under the statute of amendments and jeofails may be proper at a subsequent term, and this applies both to judgments at law and decrees in chancery." *Moore v. Shook*, 276 Ill. 47, 114 N.E. 592, 594. We hold that a court of equity has inherent power, upon petition or motion, to correct obvious errors in a decree or decretal order at any time, even after its enrollment. . . .

*Id.* at 389, 30 A.2d 249 (emphasis added).

■ In the cases at bar, the circuit court corrected its clerical mistakes before the appeals were docketed by this

Court. We are therefore persuaded that the circuit court had the authority to amend the Orders it entered on March 22, 2002.[6] We are also persuaded, however, that the circuit court should have certified the orders of dismissal as final judgments.

### Entry of Final Judgments

Md. Rule 2–602(b) authorizes a circuit court to certify as final a judgment that, "but for multi-party or multi-claim circumstances, would be final in the traditional sense." *Medical Mutual Liability Insurance Society of Maryland v. B. Dixon Evander and Associates*, 331 Md. 301, 308, 628 A.2d 170 (1993)(quoting *Planning Board v. Mortimer*, 310 Md. 639, 649, 530 A.2d 1237 (1987)).

As we noted in *Russell v. American Security Bank*, 65 Md.App. 199, 202, 499 A.2d 1320 (1985) (citations omitted), the policy of Rule 2–602 is to promote judicial economy by avoiding ". . . piecemeal appeals by providing that only [when the] trial court has fully adjudicated all issues in a case will an appeal be permitted." *See also* P. Neimeyer & L. Schuett, *Maryland Rules Commentary* at 452 (2d ed.1992).

To justify the entry of an order under Rule 2–602(b)(1) the trial court must expressly determine, and articulate for the record in a written order, that there is no just reason for delay of the appeal. *Tyrone W. v. Danielle R.*, 129 Md.App. 260, 270, 741 A.2d 553 (1999). The certification permitted by Rule 2–602 ". . . should be used sparingly so that piece-

---

6. Assuming, *arguendo*, that the circuit court intended to—and did—dismiss the entire action, that ruling would have been erroneous. Md. Rule 2–213 provides:

Misjoinder of parties is not ground for dismissal of an action. So long as one of the original plaintiffs and one of the original defendants remain as parties to the action, parties may be dropped . . . by order of the court on motion of any party. . . . Any claim against a party may be severed and proceeded with separately.

Severance rather than dismissal is the appropriate remedy for misjoinder when, as here, the appellants and the Asbestos Defendants would "remain as parties" even if the Cigarette Defendants were "dropped."

meal appeals and duplication of efforts and costs in cases involving multiple claims or multiple parties may be avoided...." *Maryland–Nat'l Capital Park & Planning Comm'n v. Smith, et vir,* 333 Md. 3, 7, 633 A.2d 855 (1993). The certification process is to be reserved for "the infrequent harsh case." *Allstate Ins. Co. v. Angeletti,* 71 Md. App. 210, 218, 524 A.2d 798 (1987) (quoting *Panichella v. Pennsylvania R.R. Co.,* 252 F.2d 452, 455 (3d Cir.1958), *cert. denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960)). A common factor in the cases in which piecemeal certification has been permitted is the potential that delay of the appeal may work an economic hardship upon one or more of the parties. *Canterbury Riding Condominium v. Chesapeake Investors, Inc.,* 66 Md.App. 635, 652, 505 A.2d 858 (1986) (citing *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). Whether the case involves multiple parties or multiple claims, the criteria for application of the rule are the same. *Planning Board of Howard County, et al, v. Mortimer, et al,* 310 Md. 639, 530 A.2d 1237 (1987).

Moreover, successful application of the certification process requires that the trial court "... expressly determines in a written order that there is no just reason for delay...."

*Murphy v. Steele Software Sys. Corp.,* 144 Md.App. 384, 392–94, 798 A.2d 1149 (2002).

In *Wilde v. Swanson,* 314 Md. 80, 548 A.2d 837 (1988), the Court of Appeals affirmed the decision of the circuit court to certify as final the dismissal of one of four defendants. In that case, a motel guest who had been assaulted by three men filed suit against the alleged assailants and the motel owner. *Id.* at 80, 548 A.2d 837. After the motel owner filed a motion to dismiss on the ground of improper venue, the circuit court (1) dismissed the claims asserted against the owner, and (2) certified that decision as a final judgment. *Id.* at 83, 548 A.2d 837. The Court of Appeals rejected the motel owner's argument that the dismissal of the claims against him should not have been certified for immediate appeal.

According to the *Wilde* Court, (1) the claims against the motel owner and the assailants "arose out of the same transaction or occurrence;" (2) on the issues of liability and compensatory damages, the litigation would involve a substantial amount of "common proof;" and (3) if the circuit court's ruling on venue turned out to be erroneous, the correction of that error *after* the trial of the victim's case against the assailants would (in addition to "limitation problems") have "unnecessarily multiplied the time, effort, and expense for the plaintiffs in asserting all of their claims and needlessly created collateral estoppel complexities." *Id.* at 87–88, 548 A.2d 837. Applying the holding in *Wilde* to the facts of the case at bar, we are persuaded that the circuit court had discretion to certify the orders at issue as final judgments.

The reasons for certification that were discussed by the *Wilde* Court are equally applicable to the case at bar. Because appellants seek to hold both the Cigarette Defendants and the Asbestos Defendants liable under the "synergy theory," the claims against both groups will involve a substantial amount of "common proof." Moreover, it is more likely so than not so, that a jury considering only appellants' claims against the Asbestos Defendants would be presented with evidence that appellants' injuries were caused and/or aggravated by their use of tobacco.[7] A trial court's time is a valuable public commodity that should not be wasted.[8] If the

---

7.  *See, e.g., Adams v. Owens–Illinois, Inc.,* 119 Md.App. 395, 406–07, 705 A.2d 58 (1998); *Brisboy v. Fibreboard Corp.,* 429 Mich. 540, 418 N.W.2d 650 (1988); *Owens Corning Fiberglas Corp. v. Parrish,* 58 S.W.3d 467 (Ky.2001); and *Dafler v. Raymark Indus., Inc.,* 259 N.J.Super. 17, 611 A.2d 136 (1992), *aff'd,* 132 N.J. 96, 622 A.2d 1305 (1993).

8.  During the hearing on the motions to strike the March 28 Orders, appellants' counsel posed the following questions:

    What about the side where the plaintiff loses, loses on a medical issue or on a substantial factor issue? Is the plaintiff thereafter collaterally estopped from proceeding against the other entities because of that ruling? Let us say we have a trial against the asbestos companies and the plaintiffs lose because the plaintiff is found to have not been exposed to asbestos in a way in which exposure was a substantial factor in producing the plaintiff's injuries. Now, what

orders of dismissal were erroneously entered, there would be a needless waste of the court's time in addition to the extra time, effort, and expenses imposed upon the parties. Because the circuit court had discretion to certify the orders at issue as final judgments, we shall do so under the authority of Md. Rule 8–602 which, in pertinent part, provides:

**(e) Entry of judgment not directed under Rule 2–602.** (1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may ... (C) enter a final judgment on its own initiative. . . .

Md. Rule 8–602(e)(1)(C), which took effect on July 1, 1988, was adopted by the Court of Appeals in a Rules Order entered on November 19, 1987. The files of the Rules Committee reflect that, in a letter dated November 3, 1987, the committee's Reporter explained that the language of the current rule would provide the appellate court with an "option [that] will eliminate the necessity for a remand when the appellate court determines that entry of a judgment pursuant to Rule 2–602(b) would be appropriate." We therefore hold that, under Md. Rule 8–602(e)(1)(C), an appellate court is authorized to enter a final judgment even if the circuit court did not abuse its discretion in refusing to do so, provided that (1) the appellate court is persuaded that entry of a final judgment is appropriate under the circumstances, and (2) the circuit court had discretion to enter a final judgment but did not do so.

Because the appellate court applies the law in effect on the date that it files its opinion, rather than the law in effect when the circuit court made the ruling at issue, there are cases in

---

happens in a case where we proceed against the tobacco companies? Are we collaterally estopped from asserting a synergy argument against the tobacco companies because a jury has formerly held that the plaintiff's injury was not caused by asbestos? And despite that, can the tobacco companies nonetheless proceed and enter a defense and argue to a jury that in fact it's asbestos that caused the injury and not tobacco?

which a post-ruling change in—or a clarification of—the applicable law makes the entry of a final judgment under Md. Rule 8–602(e)(1)(C) appropriate even if the circuit court's refusal to enter a final judgment did not constitute an abuse of that court's discretion. The cases at bar are such cases. It is appropriate for this Court to enter final judgments in order to decide the issue of whether appellants are entitled to join in one action their claims against the Asbestos Defendants and the Cigarette Defendants.

**Joinder of Asbestos Defendants and Cigarette Defendants**

■ Md. Rule 2–212 governs joinder of parties and, in pertinent part, states:

(a) *When permitted.*—All persons may join in one action as plaintiffs if they assert a right to relief jointly, severally, or in the alternative in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief and against one or more defendants according to their respective liabilities.

Appellants argue that they are entitled to join the Asbestos Defendants and the Cigarette Defendants because: (1) the Maryland Rules "favor the broadest possible scope of action and encourage joinder of parties, claims and remedies;" (2) the courts permit joinder of multiple defendants alleged to have caused a plaintiff's "indivisible" injury; (3) the question of whether the appellants' injuries resulted from the synergistic effect of the harm caused by the Cigarette Defendants and the

Asbestos Defendants is "common to all defendants;" (4) appellees will suffer no unfair prejudice if the parties are joined; and (5) a severance would needlessly consume judicial resources, require that appellants incur additional litigation expenses, and afford each group of defendants the opportunity to shift the blame for appellants' injuries to the non-party defendants.

The joinder rules were enacted "to remedy the procedural and substantive defects in the law which prevented the resolution in one action of the rights and obligations of all parties whose connection with the case arose out of the same source and occurrence." *Great Atlantic & Pacific Tea Co. v. Royal Crown Bottling Co.*, 243 Md. 280, 287, 220 A.2d 598 (1966). Joinder of parties, in some cases, simplifies and expedites proceedings, avoids duplicative costs, and eliminates multiple trials. *Id.; see also Allen & Whalen v. Grimberg Co.*, 229 Md. 585, 588, 185 A.2d 337 (1962).

Md. Rule 2–212 was derived, in part, from Fed.R.Civ.P. 20(a). Federal courts have employed a case-by-case approach when determining whether a particular factual situation constitutes a single transaction. Wright, 7 *Federal Practice and Procedure* § 1653 at 409 (3d. ed.2001). Generally, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.*

Neither the Court of Appeals nor this Court has been asked to decide whether the circuit court abused its discretion in granting motions for severance filed by Asbestos Defendants and Cigarette Defendants who have been joined in one action by a plaintiff asserting the synergy theory of liability. The cases relied upon by the parties do not include a case in which this issue was of dispositive consequence to the court's decision.[9]

---

9. In *Forbes v. American Tobacco Co.*, 37 F.R.D. 530 (E.D.Wis.1965), the court severed claims against a cigarette company and a chemical company; however, the plaintiffs in *Forbes* alleged no common rela-

In *Georges v. Duncan,* 16 Md.App. 256, 295 A.2d 809 (1972), the plaintiff alleged that he was injured in two automobile accidents, the second of which occurred over four months after the first. *Id.* at 257, 295 A.2d 809. The plaintiff and his wife asserted claims against the drivers and owners of both automobiles that collided with the plaintiff's vehicle. *Id.* The plaintiff alleged in the complaint that his injuries were " 'indivisible, and incapable of apportionment as to the amount' of injury." *Id.* Both defendants moved to dismiss the complaint, and the circuit court granted those motions—while granting the plaintiffs leave to file an amended complaint. *Id.* at 257–58, 295 A.2d 809. On appeal, we agreed with the circuit court that joinder was improper. *Id.* at 258, 295 A.2d 809. We concluded that, because the acts causing the injury were separated by time and space, the defendants were "independent and not concurrent tort-feasors." *Id.* In the case at bar, unlike *Georges,* appellants have alleged that their exposure to

tionship between the claims. *Bell v. Johns–Manville Corp.,* Case No. C–80–3936 R.F.P. (N.D.Cal.1981) and *Torres v. ACandS, Inc.,* Case No. 814479 (Super. Ct. San Francisco County, Cal., 1985), are unreported cases where asbestos defendants filed third-party complaints against tobacco companies. In those cases, the plaintiffs did not allege that asbestos and cigarette defendants' concerted conduct caused their injury. Additionally, *Bell* did not discuss joinder of parties under Fed. R.Civ.P. 20(a), which Md. Rule 2–212(a) was, in part, derived.

The cases cited by appellants are also not dispositive of the present issue. *See Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974) (holding joinder of ten plaintiffs was proper in a case alleging each plaintiff had been injured by General Motors' "same general policy of discrimination"); *Jarriel v. General Motors Corp.,* 835 F.Supp. 639, 641–42 (N.D.Ga.1993) (holding joinder of two defendants was proper where plaintiffs filed a products liability claim against General Motors and a negligent roadway design claim against a local government for injuries caused by an automobile accident); *Hanes Dye and Finishing Co. v. Caisson Corp.,* 309 F.Supp. 237, 243 (M.D.N.C.1970) (holding joinder of three defendants was proper in a suit against several entities all involved in the same project); *Rodriguez v. Abbott Lab.,* 151 F.R.D. 529 (S.D.N.Y.1993) (holding joinder of a hospital (medical malpractice claim) and a drug manufacturer (products liability theory) was proper in claim alleging injury from administering a drug); *Ex parte Rudolph,* 515 So.2d 704 (Ala.1987) (holding joinder was proper in a case alleging injury from an automobile accident and subsequent medical treatment). None of these cases resolves the case at bar.

asbestos products and their cigarette smoking occurred during the same time period, *albeit* over a long period of time.

The cases at bar do not involve assertions of unrelated claims. Appellants claim that they have been injured by the combined effects of cigarette smoke and exposure to asbestos products. These claims arise out of the same series of occurrences, *i.e.*, in each respective case, exposure to both asbestos products and cigarette smoke at the same location during the same period of time. Each appellant runs the risk that, even though the jury is persuaded beyond any doubt that the appellant has been seriously injured by one or more of the appellees, the jury will find in favor of all of the appellees on the ground that the appellant has failed to prove by a preponderance of the evidence that any particular appellee caused the appellant's injuries. *See, e.g., Thodos v. Bland,* 75 Md. App. 700, 715–17, 542 A.2d 1307 (1988). Each appellant is, however, entitled to run that risk.

Other reasons lead to the conclusion that joinder is proper. Many federal courts have employed a liberal approach to the same transaction or occurrence test. Wright, 7 *Federal Practice and Procedure* § 1653 at 410–11 (3d. ed.2001). For example, courts have permitted plaintiffs to join both an "original tortfeasor and a subsequent tortfeasor whose subsequent negligence aggravated plaintiff's original injuries." *Id.* (footnote omitted); *see, e.g., Lucas v. City of Juneau,* 127 F.Supp. 730 (D.C.Alaska 1955) (concluding joinder was proper where the plaintiff injured his back at a business' office, and, after initially receiving medical treatment, subsequently aggravated the injury en route to further treatment). We have noted that in cases like *Lucas* joinder is often permitted because "the first tortfeasor may have been liable not only for the injury caused by his original negligence but also for the injury caused by the negligence of the second tortfeasor." *Georges, supra,* 16 Md.App. at 259, 295 A.2d 809.

We are persuaded that the cases at bar involve numerous common questions of law and fact, including (1) the question of whether there is scientific merit in appellants'

"synergy" theory, and (2) the question of what all of the appellees knew or should have known about the synergistic effect of cigarette smoking and exposure to asbestos. Appellees do not argue to the contrary. We are also persuaded that there are important policy reasons for joining the two categories of appellees.[10] We note that the circuit court announced its ruling on this issue before this Court filed *Mayer v. North Arundel,* 145 Md.App. 235, 802 A.2d 483 (2002), in which we discussed "the question of apportionment of damages." We have no doubt that, if the circuit court had the benefit of *Mayer,*[11] it would have rejected appellees' contention that

---

**10.** The result of the refusal to permit joinder is that: (1) in the separate suits it is open to each defendant to prove that the other was solely responsible, or responsible for the greater part of the damage, and so defeat or minimize recovery; (2) it is equally open to the plaintiff to prove that each defendant was solely responsible, or responsible for the greater part of the damage, and so recover excessive compensation; (3) the two verdicts will seldom have any relation to one another; (4) different witnesses may be called in the two suits, or the same witness may tell different stories, so that the full truth is told in neither; (5) neither defendant may cross-examine the other, or his witnesses, and the plaintiff may not cross-examine both in one action; (6) time and expense are doubled.
Prosser on Torts (5th Ed.) 327, n. 25.

**11.** In that case, Judge James R. Eyler stated:
. In a case where liability of the defendant has been assumed or established and addressing only the question of apportionment of damages, the relevant principles may be summarized as follows. Where there are two or more causes of harm, one defendant, and indivisibility is apparent, the court shall decide that apportionment is not appropriate. Restatement § 434(1). In that situation, the factfinder shall compensate the plaintiff for the entire harm. *Id.* § 433A(2). If there are two or more causes of harm, one defendant, and indivisibility is not apparent, the plaintiff has the burden of producing evidence to show that the harm is not divisible or, if it is, some evidence to show that a harm was produced by each cause and the nature of the harm. *Id.* §§ 433A(1) & 433B(1). If the plaintiff's evidence showing indivisibility is not capable of a reasonable conclusion to the contrary, assuming the defendant has not introduced conflicting evidence, the court shall decide that the harm is not divisible. *Id.* § 434(1). In that situation, the factfinder shall compensate the plaintiff for the entire harm. *Id.* § 433A(2). Where the plaintiff's evidence is capable of different conclusions, the plaintiff has the burden of persuasion with respect to indivisibility or, if it is divisible, as to the extent of the harm caused by the negligent act. *Id.*

appellants were not entitled to join in one action their claims against the Asbestos Defendants and the Cigarette Defendants.[12] We shall therefore vacate the judgments of dismissal and remand this case to the circuit court for further proceedings not inconsistent with this opinion.

**ASBESTOS DEFENDANTS' MOTIONS TO DISMISS GRANTED; CIRCUIT COURT'S ORDERS DISMISSING APPELLANTS' CLAIMS AGAINST CIGARETTE DEFENDANTS ENTERED AS FINAL JUDGMENTS PURSUANT TO MD. RULE 8-602(e)(1)(C); CIGARETTE DEFENDANTS' MOTIONS TO DISMISS DENIED; JUDGMENTS VACATED AND CASES REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; ALL PARTIES TO PAY THEIR OWN COSTS.**

§§ 433(A(1) & 433B(1). If the plaintiff's evidence is capable of different conclusions, the factfinder shall determine if the harm is capable of apportionment and, if so, apportion damages. *Id.* § 434(2). If the factinder determines the harm was not capable of apportionment, the factfinder shall compensate the plaintiff for the entire harm. *Id.* 434A(2).

*Mayer v. North Arundel,* 145 Md.App. 235, 254–55, 802 A.2d 483 (2002) (footnote omitted).

12. An appellate court must affirm the circuit court's grant—or denial—of a motion for severance unless the appellate court is persuaded that the circuit court's ruling did constitute an abuse of discretion. *See* Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary* § 2-212 (2d ed. 2000) (Md. Rule 2-212, permissive joinder of parties, "is not a rule of substantive right, but is administered in the discretion of the court"); *Saval v. BL, Ltd.,* 710 F.2d 1027, 1034 (4th Cir.1983) (stating that abuse of discretion is the proper standard of review of a trial court's denial of joinder of parties). To determine whether an abuse of discretion occurred, however, the appellate court applies the law in effect at the time its opinion is filed, rather than the law in effect at the time of the circuit court's ruling.